ZUCKERMAN SPAEDER LLP
ANDREW N. GOLDFARB (Cal. Bar No. 235615)
*agoldfarb@zuckerman.com*
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106

ZUCKERMAN SPAEDER LLP
D. BRIAN HUFFORD (*pro hac vice*)
*dbhufford@zuckerman.com*
JASON S. COWART (*pro hac vice*)
*jcowart@zuckerman.com*
399 Park Avenue, 14th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256

MEIRAM BENDAT, ESQ. (Cal. Bar No. 198884)
Psych-Appeal, Inc.
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
*mbendat@psych-appeal.com*

Attorneys for Plaintiff Annette Weil
and the Putative Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE WEIL, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE CO., *et al.*,<br><br>Defendants. | Case No. 2:15-cv-07074-MWF-JPR<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND RELATED RELIEF** |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... iii

I. SUMMARY OF THE CASE. ................................................................. 2

II. DESCRIPTION OF THE SETTLEMENT. ............................................ 4

    A. The Revised TMS Coverage Policy. ........................................... 4

    B. The Settlement Payment and Plan of Allocation. ....................... 5

    C. Release of Certain Claims against Defendants and Other
        Restrictions on Actions by Class Members. ................................ 6

    D. Other Provisions. ....................................................................... 7

III. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS. .............. 8

    A. The Settlement Class Satisfies the Rule 23(a) Requirements. ............... 9

        1. The Settlement Class is so numerous that joinder is
            impracticable. ................................................................. 9

        2. There are questions of law and fact common to the
            Settlement Class. ........................................................... 10

        3. Ms. Weil's claims are typical of those of the Settlement
            Class. ............................................................................ 11

        4. Ms. Weil will adequately represent the Settlement Class. ....... 12

    B. The Proposed Settlement Class Satisfies Rule 23(b). ........................ 13

        1. The Court may certify the Settlement Class under Rule
            23(b)(3). ....................................................................... 14

        2. The Court may certify the Settlement Class under Rule
            23(b)(1)(A). .................................................................. 16

        3. Certification under Rule 23(b)(2) is appropriate. ................ 17

IV. THE PROPOSED SETTLEMENT SATISFIES THE
    REQUIREMENTS FOR PRELIMINARY APPROVAL. ............................ 18

    A. Legal Standard for Preliminary Approval. ......................... 19

    B. The Proposed Settlement Satisfies the Standard for Preliminary
        Approval. ................................................................................ 20

        1. The Settlement is the product of arms-length negotiations. ...... 20

2. The Settlement has no obvious deficiencies.............................. 20

3. The Settlement Agreement does not improperly grant preferential treatment to the named Plaintiff or segments of the Class. ............................................................................ 22

4. The Settlement falls within the range of possible approval. ................................................................................ 23

V. THE NOTICE PLAN SATISFIES RULE 23. ............................................. 24

VI. PROPOSED SCHEDULE. ............................................................................. 25

CONCLUSION................................................................................................... 25

# TABLE OF AUTHORITIES

Page

**CASES**

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) ............................ 19

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......................................... 16

*Amgen v. Conn. Ret. Plans and Tr. Funds*, 133 S. Ct. 1184 (2013) ...................... 14

*Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451 (D. Md. 2014) ..................... 24

*Churchill v. Cigna Corp.*, No. 10-6911, 2011 WL 3563489 (E.D. Pa.
    Aug. 12, 2011) .................................................................................. 11, 16

*Churchill v. Cigna Corp.*, No. 10-6911, 2012 WL 3590691 (E.D. Pa.
    Aug. 21, 2012) ........................................................................... 11, 12, 15

*Churchill Village, LLC v. Gen'l Elec. Co.*, 361 F.3d 566 (9th Cir.
    2004) ................................................................................................... 19

*Escalante v. Cal. Phys. Svc.*, 309 F.R.D. 612 (C.D. Cal. 2015) ................. 11, 12, 18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................. 14, 19

*In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935 (9th Cir. 2011) ..................... 19

*In re Fremont Corp. Litig.*, No. 07-2693, Dkt. 277 & Dkt. 286 (C.D.
    Cal. Aug. 10, 2011) .............................................................................. 24

*In re Syncor ERISA Litig.*, No. 03-2446, Dkt. 309 (C.D. Cal. Oct. 22,
    2008) ................................................................................................... 24

*In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607 (S.D. Cal.
    2008) ..................................................................................................... 9

*In re WorldCom, Inc. ERISA Litig.*, No. 02-4816, 2004 WL 2338151,
    at *6 (S.D.N.Y. Oct. 18, 2004) ............................................................ 24

*Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164 (N.D. Cal.
    2015) ..................................................................................................... 9

*Kanawi v. Bechtel Corp.*, 254 F.R.D. 102 (N.D. Cal. 2008) ................................ 16

*Ma v. Covidien Holding, Inc.*, No. 12-2161-DOC, 2014 WL 360196
    (C.D. Cal. Jan. 31, 2014) ................................................................... 9, 19

*Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. 2008) .................... 24

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ................................................... 9

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523 (C.D.

Cal. 2004) ........................................................................................ 19

*Officers for Justice v. Civil Serv. Comm'n of San Fran.*, 688 F.2d 615
(9th Cir.1982) .............................................................................. 19

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) ........................... 22

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .............................. 19

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) ............................................ 9

*Unknown Parties v. Johnson,* 163 F.Supp.3d 630 (D. Ariz. 2016) ............................ 17

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...................................... 18

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) ........................................... 18

*Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629 (7th Cir. 2011) .............. 24

*Wit v. United Behavioral Health*, 317 F.R.D. 106 (N.D. Cal. 2016) .............. 11, 12

*Z.D. v. Grp. Health Coop.*, No. C11-1119RSL, 2012 WL 1977962
(W.D. Wash. June 1, 2012) ............................................................... 17, 18

**OTHER AUTHORITIES**

29 C.F.R. § 2560.503-1(g) ................................................................. 16

29 U.S.C. § 1104(a) ...................................................................... 17

**RULES**

Fed. R. Civ. P. 23 ................................................................*passim*

PLAINTIFF MEM. FOR PRELIM. APPROVAL;
CASE NO. 2:15-CV-07074-MWF-JPR

Plaintiff Annette Weil, individually and on behalf of those similarly situated, respectfully seeks preliminary approval of the proposed class action settlement (the "Settlement"). The Settlement, if approved, will provide significant injunctive and monetary relief to people in health plans administered by Cigna who have sought insurance coverage for transcranial magnetic stimulation ("TMS") as a treatment for depression.

Under the Settlement, Cigna has agreed to change its categorical policy that TMS is not covered for depression because it is considered an experimental, investigational, or unproven treatment. In fact, Cigna has already revised and, as of March 28, 2016, begun to apply its new policy. Under the new policy, Cigna agrees that TMS is a medically recognized treatment for depression, and people insured by Cigna-administered health plans—for the first time—may be covered for TMS, an important treatment option for major depression. Additionally, Cigna has agreed not to make its TMS coverage policy more restrictive for five years from the date of preliminary approval, unless there is a material change in the regulatory status of TMS devices approved by the Food and Drug Administration or the medical community materially changes its view on when or how TMS should be used.

Cigna has also agreed to provide significant monetary relief to the Class— $2.75 million. Pursuant to the proposed Plan of Allocation, Class Members who first sought TMS coverage under the old policy will receive either a pro rata share of the settlement amount or a significant minimum payment. Those Class Members receiving a pro rata distribution may receive (before reduction for attorneys' fees and costs) over 45% of what they were billed for TMS treatments that were fully denied by Cigna. Given the risks of litigation and the time value of money, the monetary recovery is a very favorable one for the Class.

For the reasons presented herein, the proposed settlement easily satisfies the standards for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure.

## I. SUMMARY OF THE CASE.

As alleged by Plaintiff in her complaint, this case arises out of Cigna's "Medical Coverage Policy 383" ("MCP 383"), which stated that TMS was always experimental, investigational, or unproven. Based on that policy, Cigna repeatedly denied claims to cover TMS for depression, interpreting plans it administered to exclude coverage for TMS based on a plan exclusion for experimental, investigational, or unproven treatments.

Plaintiff has suffered from major depression for 35 years. Through her husband's employer, she is insured by Cigna. In 2008, FDA cleared the first TMS medical device as safe and effective for marketing. In October 2014, Plaintiff's mental health care provider recommended TMS for Plaintiff's depression. She first made a pre-authorization request to Cigna to cover the treatment. Cigna denied pre-authorization on the grounds that Plaintiff's plan excluded TMS from coverage because it was allegedly experimental and investigational for all indications, including depression.

Plaintiff proceeded to obtain TMS treatment. She paid for it out-of-pocket and submitted claims for benefits to Cigna. Cigna rejected those claims, and Plaintiff's two internal appeals of those denials, based on the same exclusion for experimental or investigational treatments (the "E/I Exclusion"). Plaintiff then sought external review by defendant MCMC, an "external review organization" retained by Cigna to conduct reviews of Cigna's coverage denial decisions. MCMC upheld Cigna's decision, agreeing that TMS was per se excluded from coverage as an experimental or investigational treatment.

Having exhausted the review process provided in her plan, in September 2015 Plaintiff, individually and on behalf of all others similarly situated, sued Cigna and MCMC in this Court for their respective breaches of their fiduciary duties, wrongful denial of benefits, and other equitable and injunctive relief under

the Employee Retirement Income Security Act of 1974 ("ERISA").

Defendants answered the Complaint on November 2, 2015. Defendants denied all liability and asserted numerous affirmative defenses, including that the alleged classes could not meet the standards for certification under Rule 23.

After exchanging initial discovery, Plaintiff and Cigna entered into negotiations in December 2015 to explore the potential for early resolution of Plaintiff's claims.[1] Plaintiff conditioned any settlement on two main components: (i) a change in Cigna's TMS policy such that Cigna would not categorically consider TMS for depression subject to the E/I Exclusion; and (ii) payment of benefits to Plaintiff and the class of people who were denied coverage of TMS by Cigna based on the E/I Exclusion in Cigna Plans.

In connection with the settlement negotiations, Cigna provided Plaintiff with information about the number of persons who were included in the putative TMS Cigna Class, and about the monetary value of denied claims. Based on this and other information, Plaintiff was able to evaluate the risks of continuing to litigate and the benefits of the proposed Settlement.

The parties had an all-day settlement meeting in late January 2016, and continued their negotiations thereafter. During this period of settlement negotiations, Cigna expressed interest in implementing a new TMS coverage policy even though the Settlement Agreement had not been executed. On March 28, 2016, Cigna implemented the new TMS policy. In September 2016, Plaintiff and Cigna notified the Court that they had tentatively agreed on a proposed settlement (Dkt. 55). Since that time, in the course of negotiations Cigna has provided substantial additional, updated information about the TMS claims of the proposed settlement class that was critical to Plaintiff's evaluation of the proposed settlement.

---

[1] MCMC also provided Plaintiff with preliminary information about the number of external reviews it had conducted on appeal of Cigna TMS denials during the Class Period, and MCMC's decisions resulting from those reviews.

## II.    DESCRIPTION OF THE SETTLEMENT.

The proposed settlement has three major components: (1) a "Revised TMS Coverage Policy," including provisions limiting the circumstances under which Cigna may change the Revised TMS Coverage Policy for the next five years; (2) payment by Cigna of a $2.75 million "Settlement Amount" to be allocated among members of the proposed "Settlement Class" according to a Plan of Allocation; and (3) a release of certain claims against Cigna related to TMS. The Settlement will be administered by a third-party administrator (the "Settlement Administrator").

The Settlement Class for which Plaintiff seeks certification includes all individuals who Cigna has identified, through its reasonable efforts, who meet the following criteria (Settlement Agmt., sec. 1.15):

> Any individual: (1) who is or was enrolled in an ERISA-governed plan administered by a Cigna Defendant, or insured under ERISA-governed health insurance coverage offered by a Cigna Defendant in connection with a plan, (2) whose TMS claims were administered by a Cigna Defendant, and (3) who made a claim (including a request for pre-service authorization or a request for payment or reimbursement) for TMS based on a diagnosis of depressive disorder (a) that was denied and not paid, (b) that has a date of service or letter denying pre-service authorization dated on or after September 8, 2011, and (c) that was adjudicated as reflected in the class list data provided by Cigna on February 16, 2017.

### A. The Revised TMS Coverage Policy.

Under Section 2.4 of the Settlement Agreement (attached as Attachment A hereto), Cigna agrees to make effective the Revised TMS Coverage Policy for plans governed by ERISA within 20 days after entry of an order granting preliminary approval to the Settlement. As noted above, it implemented a Revised TMS Coverage Policy in March 2016. For a year from preliminary approval, Cigna will not deny coverage of TMS for depression using an FDA-approved device on the

grounds that TMS is experimental, investigational, or unproven, and will not make the policy more restrictive than the promulgated policy. For years two to five after preliminary approval, Cigna will not deny coverage of TMS for depression using an FDA-approved device or make the Revised TMS Coverage Policy more restrictive unless: (i) there is a material change in the legal or regulatory conditions regarding the use of TMS for depression; (ii) the American Medical Association or the American Psychiatric Association issues an organizational statement or practice guideline advising that TMS is experimental, investigational, or unproven for the treatment of depression or that TMS should be used more restrictively than as set out in the Revised TMS Coverage Policy; (iii) there is a material change in the weight of the relevant scientific literature regarding the use or effectiveness of TMS in the treatment of depressive disorders that shows TMS use should be limited to circumstances more restrictive than those covered by the Revised TMS Coverage Policy; or (iv) there is a material change in the standard of care for the use of TMS to treat depressive disorders.

During the five year period described above, Cigna must notify class counsel in writing of any change to the Revised TMS Coverage Policy.

## B. The Settlement Payment and Plan of Allocation.

Section 2.9 of the Settlement Agreement provides that Cigna will pay the Settlement Amount of $2.75 million (*see Id.*, sec. 1.14) into an account administered by the Settlement Administrator. Within 20 business days after preliminary approval, Cigna will pay $150,000 of the Settlement Amount to contribute to the costs of notice. The rest of the Settlement Amount will be paid within 20 days after final approval of the Settlement. The Settlement Amount will be reduced proportionally if more than 7.5% of Class members validly opt-out of the Settlement. *Id.*, sec. 2.7(c).

The Settlement Fund will consist of the Settlement Amount, less notice costs,

any named plaintiff incentive award, and attorneys' fees and expenses approved by the Court. *Id.*, sec. 2.10. The Settlement Administrator will distribute the Settlement Fund to members of the Settlement Class according to the Plan of Allocation attached as Exhibit C to the Settlement Agreement. *Id.*, sec. 2.13.

The Plan of Allocation provides payment to all Class Members. Class Members who first sought TMS coverage before March 28, 2016 will receive either the greater of (i) a proportional share of the Settlement Fund based on their "Recognized Loss"; or (ii) a fixed minimum amount, which Plaintiff expects to be approximately $1,000. Class Members who first sought TMS coverage on or after March 28, 2016, and thus have benefited from the relief sought and obtained through this litigation, will receive a fixed minimum amount, which Plaintiff expects will be approximately $500.

Under the Plan of Allocation, each Class Member's Recognized Loss will be the value of their total billed charges for all fully denied TMS claims during the Class Period as reflected in Cigna's records (up to a maximum of $100,000). The Plan of Allocation will not recognize any Recognized Loss associated with TMS claims that were paid (in whole or in part).[2] Class Members who think they paid more for TMS during the Class Period than Cigna's records show they were billed will be able to submit evidence to the Settlement Administrator showing the total amount they paid for TMS during the Class Period.

## C. Release of Certain Claims against Defendants and Other Restrictions on Actions by Class Members.

Upon the Effective Date of the Settlement, the Settlement Class Members will release Cigna (and related entities) and MCMC from Settled Claims, which are

---

[2] As part of the notice plan, Class Members will receive a sheet that states the total amount that Cigna's records show they were billed for all TMS that they received during the Class Period.

defined in part as "any and all past, present and future claims, actions, causes of action, rights or liabilities, known or unknown, based in whole or in part on facts existing as of the date on which the motion for preliminary approval is filed with the Court, arising out of or related to Defendants' decisions concerning coverage of TMS for the treatment of a depressive disorder." *Id.*, secs. 2.18, 1.12 (definition of Settled Claims). Settled Claims do not include claims challenging individual medical necessity determinations for coverage of TMS made under the Revised TMS Coverage Policy, or claims challenging Cigna's failure to pay for TMS approved under the Revised TMS Coverage Policy. *Id.*, sec. 1.12.

The Settlement Agreement also contains additional reasonable restrictions on separate action of Settlement Class Members relating to this case and the Settled Claims. First, Class Members may not personally initiate a facial legal challenge to the Revised TMS Coverage Policy or revisions thereto for five years from preliminary approval; however, they may participate as absent class members should a non-Class Member bring such a suit. *Id.*, sec. 2.20. Second, if before the opt-out deadline a putative member of the Settlement Class brings a separate action raising one or more Settled Claims, the proposed Preliminary Approval Order contains an injunction that: gives Cigna more time to respond; requires Cigna to provide the Preliminary Approval Order to counsel for the plaintiff in such other action; and directs the plaintiff to withdraw such other complaint or opt-out of the Settlement Class by the earlier of 10 days after receiving the Preliminary Approval Order or the deadline for submitting a valid Opt-Out Form. *Id.*, sec. 3.10. After the opt-out deadline, Settlement Class Members will be preliminarily enjoined from asserting Settled Claims. *Id.*

**D. Other Provisions.**

In addition to the foregoing, the proposed Settlement also contains the following provisions:

1           1.    <u>Notice to the Settlement Class</u>. Section 2.6 of the Settlement

2    Agreement provides for the Settlement Administrator to send out the "Notice of

3    Proposed Settlement of Class Action and Fairness Hearing" ("Notice of

4    Settlement") to members of the Settlement Class within 60 days after the

5    Preliminary Approval Order is entered by the Court. The proposed Notice of

6    Settlement is attached as Exhibit B to the Settlement Agreement. Cigna will

7    provide the Settlement Administrator the names and last known addresses of the

8    Settlement Class members. The Settlement Administrator will use its best efforts to

9    locate and notify Class members. As further described in Section V, *infra*, notice

10   will occur principally by first-class U.S. Mail and follow-up post-card notice,

11   supported by a settlement website.

12         Under Section 2.7, if the Court approves the Settlement Class for settlement

13   purposes under any prong of Rule 23(b), members of the Settlement Class will have

14   the opportunity to opt out of the Settlement. The Notice of Settlement explains the

15   opt-out and objection procedures and includes an opt-out form. To be valid, the opt-

16   out form or objection must be received by the Settlement Administrator within 40

17   days after the Notice of Settlement is issued.

18          2.    <u>Incentive award for named Plaintiff</u>. The Settlement Agreement

19   provides that Plaintiff and Class Counsel, in the motion for final approval, may

20   request that the Court approve an incentive award for the named Plaintiff of

21   $25,000, to reflect her important contributions to this case. *Id.*, sec. 4.6.

22          3.    <u>Attorneys' fees</u>. Class Counsel will be paid a portion of the

23   Settlement Amount as their attorneys' fees in the amount approved by the Court.

24   Attorneys' fees will be at most 33% of the Settlement Amount. *Id.*, sec. 2.10.

25   ## III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.

26

27         The Settlement Agreement provides for conditional certification of a

28   proposed Settlement Class. "Parties may settle a class action before class

certification and stipulate that a defined class be conditionally certified for settlement purposes." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (citing *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003)). For the purpose of conditionally certifying the class for settlement purposes, plaintiffs must first show that: (1) the class is so numerous that joinder of all members individually is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the person representing the class is able to fairly and adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *Ma v. Covidien Holding, Inc.*, No. 12-2161-DOC, 2014 WL 360196 at *1 (C.D. Cal. Jan. 31, 2014); *Staton v. Boeing*, 327 F.3d 938, 953 (9th Cir. 2003). Second, the plaintiff must show that the Class meets one of the prongs of Rule 23(b).

Here, the Settlement Class satisfies the Rule 23(a) elements and also satisfies each of the sections of Rule 23(b): Rule 23(b)(3), Rule 23(b)(1)(A), and (b)(2).

## A. The Settlement Class Satisfies the Rule 23(a) Requirements.

### 1. The Settlement Class is so numerous that joinder is impracticable.

A class should be certified where the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 183 (N.D. Cal. 2015).

The proposed Settlement Class easily satisfies this requirement. Based on information produced by Cigna, the TMS Class includes 927 people. *See* Ex. 2 to Declaration of Andrew N. Goldfarb, attached as Attachment B hereto).

### 2. There are questions of law and fact common to the Settlement Class.

Rule 23(a)'s commonality requirement is met when "the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] with one stroke." *Kamakahi*, 305 F.R.D. at 172 (internal quotation and citation omitted). Rule 23(a)(2) only requires a putative class to point to "a *single* significant question of law or fact." *Id.* (emphasis added).

Here, the claims of every putative member of the Settlement Class, including Ms. Weil, turn on the following common questions:

- Was Cigna acting as an ERISA fiduciary when it created its TMS policy and adopted its policy and practice of applying it to requests for TMS coverage?
- Was TMS experimental and investigational?
- Did Cigna breach its fiduciary duties when it developed its TMS policy?
- Did Cigna abuse its discretion by utilizing its TMS policy when it analyzed and denied Class members' claims?
- Would Class members be entitled to the relief sought if Plaintiff established liability?

The answer to each of these questions would be the same for every Settlement Class member, and would rest on common proof that does not depend upon the individual circumstances of any Settlement Class member, including Ms. Weil. Such common proof would include, among other things: MCP 383, which was designed to be used to interpret plans that Cigna administered and stated that it applied to "health benefit plans administered by Cigna companies" (Ex. 1 to Goldfarb Decl.); documents prepared or received by the Cigna employees involved in developing MCP 383; testimony from such employees about the development of

MCP 383; evidence of actions and reviews by governmental bodies, such as FDA, as well as medical societies, leading university medical centers, and medical journals, concerning the extent to which TMS is a generally recognized treatment for depression; and expert testimony comparing the evidence cited by Cigna in MCP 383, and its interpretation of that evidence, to the full body of scientific and medical literature about TMS.

In *Churchill v. Cigna Corp.*, the court found commonality and certified a class where, like here, the plaintiffs alleged a violation of ERISA based on the insurer's uniform policy that a treatment was investigative or experimental and thus excluded from coverage. No. 10-6911, 2011 WL 3563489 at *1 (E.D. Pa. Aug. 12, 2011); *see also Churchill v. Cigna Corp.*, No. 10-6911, 2012 WL 3590691, *1 (E.D. Pa. Aug. 21, 2012) (finding commonality in second decision on class certification); *Escalante v. Cal. Phys. Svc.*, 309 F.R.D. 612, 618 (C.D. Cal. 2015) (commonality existed where plaintiff challenged defendant's uniform policy of categorically denying coverage for lumbar ADR procedures as an excluded, investigational procedure); *Wit v. United Behavioral Health*, 317 F.R.D. 106, 133 (N.D. Cal. 2016) (finding commonality where plaintiffs challenged mental health guidelines developed and applied by defendant on the grounds that they were inconsistent with generally accepted standards of care). The well-reasoned conclusions of the courts in these factually similar cases strongly support a finding of commonality here.

### 3.  Ms. Weil's claims are typical of those of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." To assess typicality, courts "consider whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."

*Kamakahi*, 305 F.R.D. at 183 (internal quotation and citation omitted).

The same allegations described above that demonstrate commonality also show that Ms. Weil's claims are typical of those of other members of the proposed Settlement Class. As indicated *supra*, Ms. Weil would argue that Cigna was an ERISA fiduciary and that Cigna violated its fiduciary obligations to her by developing and applying a flawed policy that TMS was experimental and investigational for treatment of depression. Those are the same arguments all other putative Class members would make to establish Cigna's liability for breaches of fiduciary duties under ERISA.

Similarly typical is Ms. Weil's claim that Cigna abused its discretion when it arbitrarily and capriciously relied on its TMS policy to reject her claims for benefits. As alleged, Cigna took the same approach, and reached the same outcome, for all members of the putative TMS Class. (Compl. ¶¶ 52, 66(c), 76-80.)

In *Churchill*, the court found that the plaintiff was typical because the same conduct about which he complained—"CIGNA's denial of reimbursement for ABA therapy on the grounds it is experimental—affected other current CIGNA members." *Churchill* 2012 WL 3590691 at *8; *see also Escalante*, 309 F.R.D. at 619 (finding typicality where defendant's uniform policy of excluding a medical procedure from coverage caused plaintiffs and class members the same injury— "being denied or deterred from claiming benefits"); *Wit*, 317 F.R.D. at 129. Just as with the commonality requirement discussed *supra*, these decisions support a finding of typicality here.

### 4.  Ms. Weil will adequately represent the Settlement Class.

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The "adequacy" requirement is satisfied "if the proposed representative plaintiffs do not have conflicts of interest with the proposed class and are represented by qualified

and competent counsel." *See Kamakahi*, 305 F.R.D. at 184. The proposed Classes and their counsel also meet these requirements.

First, Ms. Weil's interests are fully aligned with those of the proposed Settlement Class, and there are no conflicts. Ms. Weil and Settlement Class members share an interest in demonstrating that Cigna's development of its TMS policy and application of that policy violated ERISA, and in obtaining injunctive and equitable relief, including requiring Cigna to reprocess the claims it arbitrarily and capriciously denied. Ms. Weil has met with her attorneys, kept abreast of the case as it has developed, and consistently acted to ensure that actions taken by her counsel were in the best interests of the putative class.

Second, proposed class counsel are experienced class action attorneys who are well qualified to evaluate and litigate this case. The lawyers from Zuckerman Spaeder LLP have successfully prosecuted numerous nationwide class actions against insurance companies for violations of ERISA and related federal and state laws. Among their successes were two of the largest recoveries ever obtained in health insurance class actions: a $350 million settlement against United Healthcare and a $250 million settlement against Health Net. *See* Ex. 3 to Goldfarb Decl. Meiram Bendat, J.D., Ph.D., the Founder and President of Psych-Appeal, Inc., has extensive experience in class action litigation against insurers and specializes in cases involving mental health-related insurance benefit denials. *Id*. Proposed class counsel will more than adequately protect the interests of the proposed Classes.

**B. The Proposed Settlement Class Satisfies Rule 23(b).**

As noted above, after satisfying the threshold requirements of Rule 23(a), Plaintiff must also establish that a class is maintainable under at least one of the types described in Rule 23(b). Here, Plaintiff challenges Cigna's adoption of the MCP 383 and then its reliance on MCP 383 to deny coverage for TMS; the allegedly unlawful conduct was the same as to all Settlement Class members; and

the Settlement Class seeks payment of benefits, as well as injunctive and declaratory relief. Accordingly, the Court may certify the Settlement Class under any of the prongs of Rule 23(b).

### 1. The Court may certify the Settlement Class under Rule 23(b)(3).

A class may be certified under Rule 23(b)(3) if "questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Predominance. At this stage, the plaintiff need establish only that *questions* common to the class predominate; she need not "prove that prove that the predominating question will be answered in [her] favor." *Amgen v. Conn. Ret. Plans and Tr. Funds*, 133 S. Ct. 1184, 1191, 1196 (2013). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotations omitted).

As shown above, the claims of Settlement Class members all rest on common questions that are susceptible to proof by common evidence. In addition, all Settlement Class members seek the same relief, and their entitlement to such relief does not depend on individualized issues.

The *Churchill* case's reasoning on predominance is applicable because that that case, like this one, arose out of a challenge to Cigna's denial of coverage based on its uniform policy that a treatment was experimental or investigational. The court stated:

> Distinctions in class members' CIGNA plan terms do not preclude a finding of predominance; while each member's plan may have different exclusions, it appears the "experimental" exclusion remains the ultimate basis for CIGNA's denial of ABA therapy….[I]t is clear CIGNA has determined, on a class-wide basis, that ABA is experimental therapy in all cases, denying such therapy "for any indication," "regardless of the code submitted. Consequently, it must be determined whether CIGNA's uniform policy to deny claims for ABA on the basis that it is experimental violates ERISA. The propriety of this uniform policy—specifically, whether it violates ERISA—can be litigated in a single forum.

*Churchill*, 2012 WL 3590691, at *10.

Superiority. The proposed Settlement Class also satisfies the superiority requirement because "the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (internal quotations omitted). In this case, "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Id.* The factors that determine whether class treatment is superior to other methods of adjudication include (a) the interest of class members in individually controlling the prosecution of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in managing a class action. Fed. R. Civ. P. 23(b)(3) (A)-(D).

Each of these factors favors certification here. The overriding common issues in this case would allow this case to be litigated efficiently to resolve Cigna's liability under ERISA and to pursue common injunctive relief—a change in Cigna's TMS policy and reprocessing of benefit claims. Certification of the Settlement Class, therefore, would best serve the interests of both the individual

Class members and judicial economy. *See, e.g., Churchill*, 2011 WL 3563489, at *7 (finding superiority, *inter alia*, where an individual's cost of pursuing her claim could exceed recovery, and the time and resources "required to litigate against a well-funded company could deter meritorious lawsuits"). As in *Churchill*, the Court should similarly conclude that litigating the common questions on a classwide basis is the best, most efficient way to resolve this case.

Ascertainability. Finally, courts have implied an "ascertainability" requirement for class certification pursuant to Rule 23(b)(3). This requirement simply means that class "membership must be determinable from objective, rather than subjective, criteria." *Kamakahi*, 305 F.R.D. at 185.[3]

Here, the composition of the Settlement Class is objectively ascertainable from Cigna's records. Cigna maintains records of its coverage decisions and the reasons therefor. Indeed, ERISA requires Cigna to issue a written notification of a coverage denial decision to the member. The notification must state the rationale for the determination. 29 C.F.R. § 2560.503-1(g). Accordingly, all of the information necessary to determine whether an individual is in the Settlement Class is contained in records in Cigna's possession.

## 2. The Court may certify the Settlement Class under Rule 23(b)(1)(A).

Rule 23(b)(1)(A) certification is appropriate "where the party is obliged by law to treat the members of the class alike." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). ERISA class action cases are particularly appropriate for certification under Rule 23(b)(1)(A) because ERISA plan beneficiaries are all owed the same fiduciary duties. *See Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008) ("Most ERISA class action cases are certified under Rule 23(b)(1).");

---

[3] If the Court requires a showing of ascertainability under either Rule 23(b)(1) or (b)(2), Plaintiff incorporates her showing to those prongs of Rule 23.

*see also Z.D. v. Grp. Health Coop.*, No. C11-1119RSL, 2012 WL 1977962, at *7 (W.D. Wash. June 1, 2012) ("The Court can envision few better scenarios for certification under (b)(1)(A)" than claims that an ERISA fiduciary's internal policy/practice was illegal).

The proposed Settlement Class satisfies the requirements of Rule 23(b)(1)(A) because Cigna owes the same fiduciary obligations to all ERISA plan beneficiaries. 29 U.S.C. § 1104(a). Moreover, as alleged the fiduciary breaches alleged here are independent of the particular language of any Cigna plan. (Compl. ¶¶ 63, 65.)

Adjudication of Settlement Class members' claims on a non-class basis would risk establishing "incompatible standards of conduct" for Cigna. All members of ERISA plans administered by Cigna are entitled to the same legal rights, including the right to a review of coverage and benefits requests by Cigna that complies with its fiduciary obligations imposed by ERISA. If the proposed Settlement Class is not certified, any of the hundreds of putative Class members could file an individual lawsuit asserting the claims raised herein. It is possible that courts could disagree, with one court ruling that Cigna breached its fiduciary duties in developing or applying its TMS policy, or that Cigna abused its discretion by arbitrarily and capriciously denying claims for benefits, while another court holds that it did not.

### 3. Certification under Rule 23(b)(2) is appropriate.

Under Rule 23(b)(2), a class may be maintained when the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "For purposes of Rule 23(b)(2), what matters is that a pattern of alleged violations can be remedied for all putative class members by the same form of injunctive relief." *Unknown Parties v. Johnson,* 163 F.Supp.3d 630, 643 (D. Ariz. 2016); *see also Wal-Mart Stores, Inc. v. Dukes*, 564

U.S. 338, 360 (2011) ("Rule 23(b)(2) applies when "a single injunction…would provide relief to each member of the class."); *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

The Settlement Class squarely meets the requirements for certification under Rule 23(b)(2). First, as alleged Cigna's development and application of MCP 383 to deny TMS claims was conduct that affected members of the putative class with an earliest date of service (including a pre-utilization letter) before March 28, 2016, in the same way. Second, Plaintiff has sought injunctive remedies that would provide all the Settlement Class members relief from the harm caused by Cigna's allegedly unlawful conduct. Indeed, courts have certified classes under Rule 23(b)(2) where the plaintiffs have sought claim reprocessing as a remedy for alleged ERISA violations. In *Z.D.*, the court certified a (b)(2) class where the relief sought included among other things, a declaration that the insurer had breached its fiduciary duties by wrongfully excluding certain treatments from coverage, and an order "to process all claims incurred in the past, without application of the illegal exclusion." 2012 WL 5033422, at *6 (W.D. Wash. Oct. 17, 2012); *see also Escalante*, 309 F.R.D. at 620 (certifying class under Rule 23(b)(2): "The question posed by Plaintiff— whether Defendant can categorize all lumber ADR procedures as 'investigational' under its current policies—is one that applies to the whole class.").

## IV.    THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL.

The proposed Settlement easily meets the standards for preliminary approval. It provides the two central forms of relief that Plaintiff sought when she initiated suit: (i) a change in Cigna's policy that TMS is always experimental, investigational, or unproven, and thus not covered by Cigna plans; and (ii) a mechanism by which class members could obtain insurance payments for TMS treatment received during the period of time in which Cigna's old TMS policy was

in effect.

### A. Legal Standard for Preliminary Approval.

Judicial review of proposed class settlements has three phases. First, the Court determines whether the proposed settlement deserves preliminary approval. If so, class members then receive notice describing the settlement. Thereafter, the Court decides whether to grant final approval. *See Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

Preliminary approval of a class action settlement is appropriate "if the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Ma*, 2014 WL 360196 at *4 (internal quotation marks and citations omitted). Courts "put a good deal of stock" in such class settlements. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Hanlon*, 150 F.3d at 1027. And settlement of class actions prior to trial is strongly favored. *See, e.g.*, *Churchill Village, LLC v. Gen'l Elec. Co.*, 361 F.3d 566, 576 (9th Cir. 2004).

While heightened scrutiny is appropriate when the settlement is reached before class certification, *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 946-47 (9th Cir. 2011), "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice v. Civil Serv. Comm'n of San Fran.*, 688 F.2d 615, 628 (9th Cir.1982).

At the preliminary approval stage, a court must determine whether a proposed settlement is within the range of possible approval to justify notice being sent to class members. *Ma*, 2014 WL 360196, at *4 ("The question for preliminary approval of a settlement is whether it is within the range of reasonableness.") (internal quotation and citation omitted); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is

appropriate, the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.").

## B. The Proposed Settlement Satisfies the Standard for Preliminary Approval.

The Settlement Agreement (1) is the product of serious, informed, noncollusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the Class; and (4) falls within the range of possible approval. It therefore merits preliminary approval. Plaintiff reviews each criterion in turn.

### 1.  The Settlement is the product of arms-length negotiations.

The parties reached agreement on a proposed resolution of the case after months of arms-length negotiations during which both sides had information about the relevant facts that enabled them to evaluate the strengths and weaknesses of their respective cases. As part of the negotiation, Cigna provided data about the potential size and characteristics of the Class. Plaintiff analyzed the initially produced data and requested additional information, which Cigna provided. In late September 2016, the parties reached tentative resolution on the language to be included in the Settlement Agreement. However, before reaching final agreement, Plaintiff requested, and in February 2017 Cigna provided, additional updated information that was critical to Plaintiff's evaluation of whether to consummate the settlement and on what terms.

### 2.  The Settlement has no obvious deficiencies.

As noted above, the relief obtained by Plaintiff in the Settlement addresses the two things Plaintiff sought to accomplish in this litigation—a change in Cigna's

TMS policy, and a mechanism by which class members could obtain insurance benefits for TMS received during the class period.

Under the Settlement, Cigna agreed to drop its uniform policy that TMS is experimental, investigational, or unproven as a treatment for depression and thus not covered by plans administered by Cigna. The Settlement Agreement gives Class Members protection for five years from unjustified changes to the Revised TMS Coverage Policy that make coverage more restrictive, while giving Cigna flexibility to modify the Policy if there is a material change in the legal or regulatory status of TMS devices, or if there is a material shift in scientific and medical evidence about TMS.

The Settlement Agreement will also provide significant monetary relief to be used to reimburse Class Members who received TMS during the Class Period. Pursuant to the Plan of Allocation, Class Members with an earliest date of service before March 28, 2016 will receive the greater of (i) a proportional share of the Settlement Fund based on their Recognized Loss; or (ii) a fixed minimum amount that Plaintiff expects will be approximately $1,000. Class Members with a first date of TMS service on or after March 28, 2016—and who therefore benefited from Cigna's early implementation of its revised TMS policy—will receive a fixed amount of approximately $500. This is an excellent result for Class Members for several reasons.

First, while Plaintiff believes she would have a strong chance of certifying a class and prevailing on the merits, Cigna asserted defenses that Plaintiff would have to overcome. Resolution eliminates the risk that the Plaintiff's attempt to certify the Class could fail, or that the litigation could end unsuccessfully, with no recovery at all for the putative Class. Second, even if the Class were to prevail at trial, the main injunctive remedy Plaintiff seeks is an order requiring Cigna to reprocess the denied claims under a new TMS policy. Cigna would almost certainly contend that such relief was inappropriate. Moreover, even if the Court disagreed, the parties would

have battled over the precise form of reprocessing, including the evidence to be considered, the people who would actually perform the reprocessing, and the extent to which anything other than application of the facts to Cigna's new TMS policy would be allowed. Resolution now pursuant to the Settlement eliminates all of these risks, and gives the Class the benefit of the time value of a sum clearly determined by the Plan of Allocation. By receiving money sooner, Class Members can earn interest on, invest, or spend the money, rather than being forced to wait until resolution of the litigation, which could take a year or more, to receive an amount that might well be less. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").

At the same time, the scope of the release is fair to both parties. The Settlement will allow Cigna to eliminate legal risks arising from or relating to its former policy on TMS (except from those who opt out of the Settlement), while leaving Class Members free to challenge Cigna's individual coverage decisions under the Revised TMS Coverage Policy, and to benefit from future changes to the policy that expand coverage for TMS.

### 3. The Settlement Agreement does not improperly grant preferential treatment to the named Plaintiff or segments of the Class.

The Settlement treats Class Members fairly and equally. First, all Class Members benefit from Cigna's agreement to promulgate the Revised TMS Coverage Policy, which sets out criteria for eligibility for insurance coverage for TMS that apply to all Class Members.

Second, the Plan of Allocation provides for distribution to Class Members based on a fair and reasonable allocation formula that applies to every Class Member, including the named Plaintiff, and minimizes administrative costs.

Further, Class Members with an earliest date of service under the old policy will have the opportunity to receive a pro rata share of the Settlement Fund, based on their total amount of paid TMS claims that were not processed for payment by Cigna, either because they were denied or never submitted.

In addition, the proposed incentive award to the named plaintiff reflects her important contribution to the successful resolution of this case. Cases about mental health treatment cannot succeed without individuals like Ms. Weil, who willingly cast a light on her own serious depression to help others. Ms. Weil publicly disclosed highly private, personal health information to vindicate the rights of all persons insured by Cigna-administered plans who suffer from serious depression and either were denied coverage for TMS in the past, and/or who may need access to TMS in the future. Among other personal details, Ms. Weil publicly disclosed how long she has suffered from depression and listed the numerous drugs and other forms of treatment that she has taken to try to achieve remission of her depression. Ms. Weil demonstrated extraordinary courage to serve as the named plaintiff, and has made it possible to obtain substantial injunctive and monetary relief for the Settlement Class. The proposed incentive award is reasonable.

### 4. The Settlement falls within the range of possible approval.

Finally, the Settlement falls within the range of possible approval. First, the change in Cigna's TMS policy alone is significant, valuable relief for Class Members, who suffer from treatment-resistant depression and thus who may continue to need TMS now or again in the future. Second, the Settlement is likely to pay Class Members who receive a pro rata distribution over 45% of the total billed amount for TMS treatments that Cigna denied. Indeed, given the percentage of billed charge that Cigna has historically paid for TMS claims that it has processed (65%), such Class Members may receive over 70% of what they likely would receive if their claims were reprocessed. *See* Goldfarb Decl. ¶ 9. The

recovery far exceeds approved recoveries of other approved ERISA class action settlements. *See, e.g.*, *In re Syncor ERISA Litig.*, No. 03-2446, Dkt. 309 (C.D. Cal. Oct. 22, 2008) & Dkt. 300 at 9 (8.7% of maximum damages); *In re Fremont Corp. Litig.*, No. 07-2693, Dkt. 277 at 10 & Dkt. 286 (C.D. Cal. Aug. 10, 2011) (10.8% of maximum losses); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014) (3.2% of maximum damages, with an average of $180 per class member); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (24.3% of maximum damages); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (20% recovery); *In re WorldCom, Inc. ERISA Litig.*, No. 02-4816, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (7% of maximum damages).

## V.    THE NOTICE PLAN SATISFIES RULE 23.

Rule 23(e) requires that the Court direct that notice be given to class members who would be bound by the Settlement "in a reasonable manner." For classes certified under Rule 23(b)(1) or (b)(2), notice must be "appropriate." Fed. R. Civ. P. 23(c)(2)(A). Notice to a Rule 23(b)(3) class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The notice plan proposed by Plaintiff satisfies Rule 23. Cigna will provide a "Class List" to the Settlement Administrator with the names and addresses of the presumptive members of the Settlement Class. Settlement Agmt. secs. 1.3, 2.5, 2.6. The Administrator will send the Notice of Proposed Settlement directly to the persons on the Class List via first class mail, followed by a reminder postcard. *Id.*, sec. 2.6. As described above, the presumptive Class Member will also receive individualized information about the Class Member's total amount of TMS billings and total amount of denied post-service claims reflected in Cigna's records, so that the person can understand the relief they are likely to receive, and make an informed decision about how to proceed. Both the first notice and a reminder notice

will provide Class members the address for a settlement website, which will contain the same information provided in the Notice of Proposed Settlement, including information and instructions about opting out of the Class, as well as other case documents and claim forms.[4]

## VI.    PROPOSED SCHEDULE.

Plaintiff proposes the following schedule for the period leading up to the fairness hearing at which the court will consider whether to grant final approval to the proposed Settlement.

| DATE | EVENT |
| --- | --- |
| Day 1 | Order entered granting preliminary approval |
| Day 60 | Last day to provide settlement class notice |
| Day 75 | Plaintiff files request for attorneys' fees and expenses and incentive award for class representative |
| Day 100 | Last day for class members to opt out or object to Settlement |
| Day 107 | Last day for Plaintiffs to file a motion for final approval of the Settlement and to respond to objections |
| Day 110 or after | Final settlement approval hearing |

## CONCLUSION

For the foregoing reasons, the Court should: (i) certify the Settlement Class, (ii) appoint Zuckerman Spaeder LLP and Psych-Appeal, Inc. as Class Counsel and Annette Weil as the Settlement Class representative, (iii) grant preliminary approval to the proposed Settlement Agreement, (iv) approve the proposed schedule concerning notice, opt-out, and objection deadlines, and (v) set a hearing for final approval of the Settlement. A proposed order is attached as Exhibit A to the Settlement Agreement.

---

[4] For people on the Class List whose mailed Notice is returned as undeliverable, the Settlement Administrator will use its best efforts to locate updated addresses and send the Notice to such persons at their new addresses.

Respectfully submitted,

Dated:  March 20, 2017

ZUCKERMAN SPAEDER LLP

By:    /s/ Andrew N. Goldfarb
        Andrew N. Goldfarb

Andrew N. Goldfarb (Bar. No. 235615)
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
*agoldfarb@zuckerman.com*

Meiram Bendat (Bar No. 198884)
PSYCH-APPEAL, INC.
8560 West Sunset Boulevard
Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
*mbendat@psych-appeal.com*

D. Brian Hufford (*pro hac vice*)
Jason S. Cowart (*pro hac vice*)
ZUCKERMAN SPAEDER LLP
399 Park Avenue, 14th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
*dbhufford@zuckerman.com*
*jcowart@zuckerman.com*

*Attorneys for Plaintiff Annette Weil and the Putative Class*