ZUCKERMAN SPAEDER LLP
ANDREW N. GOLDFARB (Cal. Bar No. 235615)
*agoldfarb@zuckerman.com*
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106

ZUCKERMAN SPAEDER LLP
D. BRIAN HUFFORD (*pro hac vice*)
*dbhufford@zuckerman.com*
JASON S. COWART (*pro hac vice*)
*jcowart@zuckerman.com*
399 Park Avenue, 14th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256

MEIRAM BENDAT, ESQ. (Cal. Bar No. 198884)
Psych-Appeal, Inc.
8560 West Sunset Boulevard, Suite 500
West Hollywood, CA 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
*mbendat@psych-appeal.com*

Attorneys for Plaintiff Annette Weil
and the Provisionally Certified Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE WEIL, *et al.*,<br><br>                    Plaintiffs,<br><br>       v.<br><br>CIGNA HEALTH AND LIFE<br>INSURANCE CO., *et al.*,<br><br>                    Defendants. | Case No. 2:15-cv-07074-MWF-JPR<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. iii

BACKGROUND.................................................................................................... 2

ARGUMENT ......................................................................................................... 4

I.     LEGAL STANDARDS ..................................................................... 4

II.    A FEE AWARD EQUAL TO ONE-THIRD OF THE COMMON
FUND IS FAIR AND REASONABLE IN THIS CASE ..................... 6

      A.    Class Counsel Achieved Exceptional Results for the Class,
Including Significant Non-Monetary Relief.............................. 6

          1.    The change in Cigna's TMS policy is a substantial
non-monetary benefit to Class Members ........................ 6

          2.    The Settlement provides significant monetary benefits
to Class Members ............................................................ 7

          3.    The scope of the release provided by Class Members
is reasonable ................................................................... 9

      B.    Class Counsel Risked Nonpayment and Litigated the Case
on Full Contingency, Forgoing Paid Hourly Work at
Established Rates. ..................................................................... 9

      C.    Class Counsel Faced Significant Risks from Litigating this
Complex Case through Class Certification and Trial.............. 10

      D.    A 33% Fee Award Will Provide at Most a Small Multiplier
over Lodestar .......................................................................... 12

      E.    Class Members Have Ample Opportunity To Assess This
Fee Request............................................................................. 13

III.    THE COURT SHOULD AWARD CLASS COUNSEL THEIR
OUT-OF-POCKET EXPENSES ....................................................... 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IV.   THE COURT SHOULD GRANT FINAL APPROVAL TO
      THE INCENTIVE AWARD FOR THE NAMED PLAINTIFF........14

CONCLUSION.......................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ............................................................................. 4

*Boyd v. Bank of Am. Corp.*,
    No. SACV 13-0561-DOC (JPRx), 2014 WL 6473804 (C.D. Cal.
    Nov. 18, 2014).................................................................................... 8

*City of Burlington v. Dague*,
    505 U.S. 557 (1992) ........................................................................... 12

*Craft v. Cty. of San Bernardino*,
    624 F. Supp. 2d 1113 (C.D. Cal 2008)........................................... 4, 5, 13

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ................................................................. 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................. 12

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10,
    2005) ................................................................................................. 9

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ........................................................... 5, 9

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ............................................................. 12

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ............................................................... 12

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998) .............................................................. 12

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ............................................................. 5

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................ 14

*Stetson v. Grissom*,
    821 F.3d 1157 (9th Cir. 2016) ..................................................... 12

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ................................................ 5

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................... 4, 5, 6, 9, 12, 13

*Wakefield v. Wells Fargo*,
    No. 3:13-cv-05053 LB, 2015 WL 3430240 (N.D. Cal. Mar. 28,
    2015) ....................................................................... 4, 5, 12

*Williams v. Brinderson Constructors, Inc.*,
    CV-15-02474 MWF (AGRx), 2017 WL 490901 (C.D. Cal. Feb. 6,
    2017) ........................................................................ 6, 14

**Rules**

Fed. R. Civ. P. 23 ........................................................... 4, 11

1   Plaintiff Annette Weil, on behalf of herself and the settlement class

2   provisionally certified by the Court (the "Class"), respectfully submits her

3   memorandum in support of her motion for attorneys' fees and expenses and for an

4   incentive award.

5   Zuckerman Spaeder LLP and Psych-Appeal, Inc. (together, "Class Counsel")

6   diligently prosecuted this action to achieve a very favorable result for the Class. In

7   fact, Class Counsel obtained exactly what the Plaintiff wanted—significant

8   injunctive and monetary relief for people who sought insurance coverage from

9   Cigna for transcranial magnetic stimulation ("TMS") as a treatment for depression.

10   Class Counsel: (1) negotiated a change in Cigna's old policy, which considered

11   TMS to always be experimental, investigational, or unproven treatment—and thus

12   excluded from coverage; and (2) secured significant monetary relief for the Class—

13   $2.75 million. The amount represents almost 55% of the total amount the Class was

14   billed for TMS claims that Cigna denied. This is a recovery at the very high end of

15   the range of ERISA class-action settlements. Given the risks that Class Counsel

16   faced in every phase of this case—which they took on full contingency—and

17   factoring in the time value of money, the monetary recovery is a very favorable one

18   for the Class.

19   On April 17, 2017, the Court preliminarily approved the Settlement. ECF No.

20   70. Consistent with the preliminary approval order, Plaintiff now asks the Court to

21   award attorneys' fees to Class Counsel equal to 33% of the settlement amount, or

22   $907,500. This requested award is consistent with awards in common fund cases of

23   similar size in this Circuit, is warranted by the significant monetary and non-

24   monetary relief that Class Counsel obtained for the Class, as well as the effort

25   undertaken and risk assumed by Class Counsel. It will result in Class Counsel

26   receiving, at most, a small multiplier over their lodestar. Plaintiff also seeks

27   approval to reimburse Class Counsel's out-of-pocket litigation expenses of

28   $9,370.47.

Finally, the Court should affirm its approval of an incentive award of $10,000 for the named Plaintiff.

## **BACKGROUND**

As alleged by Plaintiff in her complaint, this case arises out of Cigna's "Medical Coverage Policy 383" ("MCP 383"), which stated that TMS was always experimental, investigational, or unproven. Based on that policy, Cigna categorically denied claims to cover TMS for depression, interpreting plan terms excluding experimental, investigational, or unproven treatments to bar coverage for TMS.

After Cigna, and then external review organization defendant MCMC, denied Plaintiff's requests for TMS coverage in 2014, Plaintiff retained Meiram Bendat at Psych-Appeal, Inc., for help in 2015. Mr. Bendat has extensive experience and expertise in assisting people challenge insurance companies who have denied claims for mental health treatments. *See* Declaration of Meiram Bendat ¶¶ 5-6 ("Bendat Decl."). Recognizing that Cigna's policy might affect more people than just Plaintiff, Mr. Bendat suggested that Plaintiff retain Zuckerman Spaeder to investigate and, if warranted, litigate against Cigna on behalf of Plaintiff and a class of similarly situated individuals. Zuckerman is nationally recognized both as a premier litigation firm and as a leader in bringing innovative, successful ERISA class actions in the mental health area. *Id.* ¶ 6; Declaration of Andrew N. Goldfarb ¶¶ 5-13 ("Goldfarb Decl."). Thereafter, Plaintiff retained Zuckerman. Goldfarb Decl. ¶ 15.

Class Counsel proceeded to conduct an extensive factual and legal investigation on Plaintiff's behalf. On the fact side, in addition to Plaintiff's individual medical history and pursuit of TMS, Class Counsel researched the state of TMS science, examined the acceptance of TMS among academic medical institutions and mental health professional societies and associations, and evaluated

the prevalence of coverage of TMS among private and public insurers. On the legal side, Class Counsel researched potential claims, including whether Cigna and MCMC could be found to be fiduciaries under ERISA; and if so, the scope of their obligations; what types of injunctive and equitable remedies might be available upon a finding of liability. Class Counsel also evaluated the strength of potential class claims under Rule 23 of the Federal Rules of Civil Procedure. That work culminated in the filing of a four-count class action complaint against Cigna and MCMC in this Court in October 2015. *See* Goldfarb Decl. ¶ 16. The complaint alleged that Defendants breached their fiduciary duties and wrongfully denied benefits, and sought equitable and injunctive relief under ERISA.

After Defendants answered the Complaint and the parties exchanged initial discovery, Plaintiff and Cigna entered into arms-length negotiations in December 2015 to explore the potential for early resolution of Plaintiff's claims. Class Counsel conditioned any settlement on two main components: (i) a change in Cigna's TMS policy such that Cigna would not categorically deny coverage for TMS for depression; and (ii) payment of benefits to Plaintiff and the class of people who were denied coverage of TMS by Cigna based on CMP 383.

In connection with the settlement negotiations, Cigna provided Plaintiff with information about the number of persons who were included in the putative TMS Cigna Class, and about the monetary value of denied claims. Based on this and other information, Class Counsel were able to evaluate the risks of continuing to litigate and the benefits of the proposed Settlement, and to advise Plaintiff accordingly.

Counsel for the parties had an all-day settlement meeting in late January 2016, and continued their negotiations thereafter. During this period of settlement negotiations, the parties agreed that it made sense for Cigna to implement a new TMS coverage policy consistent with the parties' ongoing settlement negotiations. After further negotiations, in September 2016 they notified the Court of a tentative

agreement on a proposed settlement. ECF No. 55.

The parties continued to negotiate, and, after Cigna provided important updated information about the potential settlement class in November 2016 and February 2017, Class Counsel evaluated the additional data and conferred with Plaintiff about the proposed settlement. On March 20, 2017, the parties executed the stipulation memorializing the proposed Settlement, and Class Counsel filed Plaintiff's motion for preliminary approval. ECF No. 65.

On April 17, 2017, the Court held a preliminary approval hearing at which the Court questioned Class Counsel about the fee request and the requested incentive award for the Plaintiff, among other things. After the hearing, the Court granted preliminary approval to the Settlement, including preliminarily approving Zuckerman and Psych-Appeal as Class Counsel, a 33% attorneys' fee, and a $10,000 incentive award for Plaintiff. ECF No. 70 at 6-7. The Court issued a substantially identical amended order on April 19, 2017. ECF No. 71.

## **ARGUMENT**

## I.    **LEGAL STANDARDS**

Rule 23 states that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

In common fund cases in this Circuit, courts usually award class counsel fees as a percentage of the common fund. *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1116 (C.D. Cal 2008) ("the primary basis of the fee award remains the percentage method"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *Wakefield v. Wells Fargo*, No. 3:13-cv-05053 LB, 2015 WL 3430240 (N.D.

Cal. Mar. 28, 2015) (awarding percentage of common fund as attorneys' fees in ERISA class action settlement). Factors that the court considers when assessing whether the percentage requested is reasonable include "the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (internal quotation marks omitted) (citing *Vizcaino*, 290 F.3d at 1047-50). Courts also evaluate whether a percentage award is reasonable by conducting a cross-check against counsel's lodestar—i.e., the product of the number of hours worked and counsel's hourly rate. *Id.* at 949 (citations omitted); *see also Craft*, 624 F. Supp. 2d at 1116-17 (listing eight factors, including reaction of the class and lodestar comparison).

The Ninth Circuit has set 25% of a common fund as the benchmark percentage, and counseled that the benchmark "should be adjusted . . . when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). When assessing whether to diverge from the 25% benchmark, courts consider "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Wakefield*, 2015 WL 3430240, at *5. When the common fund is under $10 million, as in this case, courts often award fees above the 25% benchmark. *Craft*, 624 F. Supp. 2d at 1127; *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) ("Most of the cases Class Counsel have cited in which high percentages such as 30-50 percent of the fund were awarded involved relatively smaller funds of

less than $10 million.") (citing cases); *Williams v. Brinderson Constructors, Inc.*, CV-15-02474 MWF (AGRx), 2017 WL 490901, at *4 (C.D. Cal. Feb. 6, 2017) (awarding 33% fee).

## II.   A FEE AWARD EQUAL TO ONE-THIRD OF THE COMMON FUND IS FAIR AND REASONABLE IN THIS CASE.

Consideration of the *Vizcaino* factors in this case confirms that 33% of the Settlement Amount is a reasonable fee for Class Counsel in this case, as the Court has preliminarily found. ECF No. 71 at 7 (stating that the "complexity of the case, the result achieved for the class, counsel's experience in litigating these types of cases, and the great effort expended by counsel in litigating this matter" preliminarily justified the 33% fee).

### A. Class Counsel Achieved Exceptional Results for the Class, Including Significant Non-Monetary Relief.

The Settlement achieves for the 927-person Class the two principal forms of relief sought in the case: a change in Cigna's TMS policy, and payment of significant monetary benefits to Class Members who were denied coverage of TMS because of Cigna's old policy of categorically excluding TMS under its health plans.

#### 1. The change in Cigna's TMS policy is a substantial non-monetary benefit to Class Members.

First, Class Counsel secured a change in Cigna's TMS policy. This is a highly significant victory for Class Members because Cigna will no longer consider TMS categorically experimental or investigational for depression. In fact, in the course of the settlement negotiations, Cigna implemented a "Revised TMS Coverage Policy" *over fifteen months ago*, long before this Settlement was reached between the parties or finally approved by the Court. *See Vizcaino*, 290 F.3d at 1050 n.5 (recognizing value provided by class counsel where early settlement

provides important relief to class members more quickly). As a result, Class Members now have another safe and effective treatment option available to them. Class Counsel's ability to secure the change in policy is particularly important for this patient population, who because of their serious depression are often not well equipped to navigate their health plans' administrative processes and to advocate effectively for themselves.

Moreover, the change in policy is durable. Class Counsel negotiated limits on Cigna's ability to make the Revised TMS Coverage Policy more restrictive over the next five years—mainly, if the medical and scientific evidence shifts toward more limited use of TMS. Cigna must notify Class Counsel of any such changes to the Revised TMS Coverage Policy, so for five years Class Counsel will continue to monitor the policy on behalf of the Class to ensure that the hard-won changes are not cut back or taken away improperly.

### 2. The Settlement provides significant monetary benefits to Class Members.

In addition to securing the major change to Cigna's TMS policy, Class Counsel obtained significant monetary relief for Class Members. According to the information in Cigna's records, the Settlement Amount of $2.75 million is, in total, almost 55% of the total amount of *billed* charges for denied TMS claims—that is, the amount that the provider charged. Given that Cigna has historically paid 65% of billed charges for TMS claims it has processed, the monetary recovery is exceptional. The Settlement Fund, which is the Settlement Amount less notice costs, the incentive award for the named Plaintiff, and attorneys' fees and expenses approved by the Court, will be distributed to the Class Members pursuant to the plan of allocation.

A principal form of relief that Class Counsel would have pursued in the litigation was an order directing Cigna to reprocess Class Members' TMS claims

under a corrected standard that recognized TMS as a safe and effective treatment for depression. Under such an order, Cigna would have reconsidered its TMS denial decisions, including pre-service requests for coverage, to determine if TMS was medically necessary and thus covered by a Class Member's health plan. It is likely that Cigna would have concluded that TMS was not medically necessary for some Class Members under their plans, and thus denied coverage and/or benefits. Those Class Members would then have to pursue internal and then potentially external appeals of those denials, consuming Class Members' valuable time and resources. And, for Class Members who Cigna determined were entitled to benefits, Cigna would likely have sought to subject those claims to deductibles, co-pays, and other co-insurance obligations.

The Settlement avoids the need to reprocess and provides significant benefits to *all* Class Members more quickly, without the risk of a litigation loss for all Class Members or the risk to individual Class Members that Cigna would deny their claims on reprocessing. As indicated in Plaintiff's motion for preliminary approval of the settlement, the recovery obtained in this case—almost 55% of the total billed amount for denied TMS claims—far exceeds other approved ERISA settlements, which range from 3.2% to 20% of the class's maximum damages. *See* ECF No. 65-1 at 23-24 (citing cases).[1] And courts in this Circuit have granted 33% fee awards in cases where the monetary recovery was a much smaller percentage of class members' loss compared to the recovery that Class Counsel achieved for the Class in this case. *See, e.g.*, *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC (JPRx), 2014 WL 6473804, at * 5, 12 (C.D. Cal. Nov. 18, 2014) (approving 33% fee award on $5.8 million common fund where class got 36% of full possible relief

---

[1] Class Counsel created a Plan of Allocation that ensures *every* Class Member will get a payment, with the minimum amount expected to be approximately $500. In addition, individual Class Members will be able to submit information showing that they paid more for TMS than is indicated in Cigna's records, thereby increasing their share of the Settlement Fund.

and non-monetary relief); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *18 (C.D. Cal. June 10, 2005) (exercising discretion to award one-third of the class fund that represented 36% of total net loss).

Importantly, because of the size of the Class, the individualized contact information that Cigna has for Class Members, and the Plan of Allocation, distributions can be made automatically to the Class without requiring individual Class Members to do anything; accordingly, Class Counsel expect that the Settlement Administrator will be able to distribute nearly all of the Settlement Fund to Class Members.

### 3. The scope of the release provided by Class Members is reasonable.

As part of the Settlement, Class Counsel also negotiated a reasonable release, pursuant to which Class Members will release Cigna (and related entities) from "Settled Claims," as that term is defined in the Settlement Agreement. Class Counsel preserved for individual Class Members the ability to challenge medical necessity determinations for coverage of TMS made under the Revised TMS Coverage Policy, or claims challenging Cigna's failure to pay for TMS approved under the Revised TMS Coverage Policy.

In short, Class Counsel achieved a remarkably favorable result for the Class with respect to both non-monetary and monetary relief.

### B. Class Counsel Risked Nonpayment and Litigated the Case on Full Contingency, Forgoing Paid Hourly Work at Established Rates.

The *Vizcaino* factors include consideration of how counsel's hourly rates compare to the market rate for the particular field of law, the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis. *In re Online DVD-Rental Litig.*, 779 F.3d at 954-55. Each of those factors strongly supports the requested

33% fee. First, Class Counsel, Zuckerman and Psych-Appeal, are national leaders in the field of ERISA litigation, including class actions, on behalf of plaintiffs, providers, and others. Goldfarb Decl. ¶¶ 5-13; Bendat Decl. ¶ 5.

Second, Zuckerman uses hourly billing arrangements for about 90% of its legal services; accordingly, it sets its hourly rates annually to be competitive nationwide in complex litigation matters. The 2017 hourly rates of Messrs. Hufford ($1,025 per hour) and Cowart ($875) in New York City, Mr. Goldfarb ($750) in Washington, DC, and Mr. Bendat ($750) in Los Angeles, are consistent with rates at peer firms in those markets. Indeed, hundreds of Zuckerman clients currently pay Zuckerman's established rates each month in ongoing matters. Goldfarb Decl. ¶ 6; Bendat Decl. ¶ 7. As a result, Class Counsel's rates are not "artificial" or inflated, nor are they adjusted to reflect the risks inherent in contingency-based class action work. Goldfarb Decl. ¶ 6.

Third, Class Counsel took the case as a full-contingency matter, increasing their risk of nonpayment and exposure in the event of an unsuccessful outcome. By taking on the case, Zuckerman invested time in a matter with an uncertain outcome rather than applying that time in hourly cases with regular payment at its hourly rates. *Id.* ¶¶ 18-19.

### C. Class Counsel Faced Significant Risks from Litigating this Complex Case through Class Certification and Trial.

The Court has preliminarily found that the Class satisfied the Rule 23 requirements for certification. However, had the parties been unable to reach a negotiated resolution, Class Counsel faced legal and factual challenges with respect to every major facet of the case—class certification, the merits of Plaintiff's claims about TMS, and the relief that Plaintiff sought.

Class certification is a first hurdle Class Counsel would have had to surmount. But for the settlement, Cigna would have challenged class certification

on numerous grounds under both Rule 23(a) and Rule 23(b). If Class Counsel had succeeded in certifying the class, Cigna could have sought immediate appellate review under Rule 23(f), challenging the certification decision on one or more grounds. Indeed, this is exactly what has occurred in a similar TMS case that Class Counsel are currently litigating against another insurance company. *See Meidl v. Aetna Life Ins. Co.*, No. 17-609 (2d Cir. 2017) (petition for appeal under Rule 23(f) after district court certified class under Rule 23(b)(1) and (b)(2)).

Assuming a class was certified and not successfully challenged through Rule 23(f) review, Cigna next would have vigorously disputed Plaintiff's case on the merits. Class Counsel would have continued and intensified their factual research to buttress the proof that CMP 383 was contrary to the scientific and medical evidence and to defeat Cigna's argument that CMP 383 was scientifically correct. With the help of one or more experts, Class Counsel would have had to master the medical literature, including the nature, quality, and weight of evidence concerning TMS. Class Counsel would have had to evaluate whether and how the strength of the evidence about TMS evolved during the Class Period and how that impacted different iterations of CMP 383 that Cigna issued during the relevant time period, policies that Cigna would argue were entitled to deference. Such full understanding of the factual and legal issues would have be necessary to enable Class Counsel to depose and cross-examine Cigna personnel and experts, who would be prepared to identify weaknesses in the scientific and medical evidence supporting TMS. While Class Counsel believe they had a strong merits case to present, Plaintiff was not assured of prevailing in whole or even in part.

Third, Cigna would have vigorously challenged the relief sought by Plaintiff on legal and factual grounds. In particular, Cigna would likely have contended that reprocessing is not a proper remedy, and the parties would have litigated the nature of scope of evidence that could be considered on remand, the standard to be applied, who should conduct the review, and other issues.

Finally, if Plaintiff prevailed at trial, Class Counsel faced the prospect of an appeal after final judgment by Cigna on one or more of the main issues—class certification, the merits, and appropriate equitable and injunctive relief. In short, litigation of Plaintiff's claims was no "slam dunk"—Class Counsel faced real risk of defeat on several fronts, any one of which would have ended or significantly weakened the chance for a successful outcome. *See* Goldfarb Decl. ¶¶ 18-19.[2]

### D. A 33% Fee Award Will Provide at Most a Small Multiplier over Lodestar.

As noted above, courts also assess the reasonableness of a common fund fee award by comparing it to counsel's lodestar. When performing a lodestar check, "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment." *Wakefield*, 2015 WL 3430240, at *5 (citing *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998)); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement.").[3]

---

[2] Even as to the settlement-related data, Class Counsel had to understand the class size and characteristics, in order to evaluate whether this was a good settlement for the Class and to so advise Plaintiff.

[3] Even if the Court were to use the lodestar method, courts adjust the lodestar upward to account for risk incurred by class counsel or other factors. Courts in this circuit can apply either a "risk multiplier" or a "reasonableness multiplier." Under the first, the district court "*must* apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.'" *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016). Alternatively, the court may adjust the lodestar applying "reasonableness" factors, which overlap with the *Vizcaino* considerations discussed above:  the quality of representation; the benefit obtained for the class which is the most important factor; the complexity and novelty of the issues presented; and the risk of nonpayment. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), abrogated on other grounds by *City of Burlington v. Dague*, 505 U.S. 557 (1992). Under either approach to the lodestar calculation, the fee requested here would be supported by the above (Continued…)

In this case, using current rates, Class Counsel's lodestar is approximately $571,115. Goldfarb Decl. ¶¶ 17, 20. Thus, even *before* applying any lodestar enhancement, and *before* consideration of the additional work that Class Counsel will do to secure final approval of the Settlement and over the next five years in monitoring and enforcing the Settlement, a 33% fee would be less than a 1.6 multiplier over Class Counsel's unadjusted lodestar. A 1.6 multiplier is on the low end of the typical range. *See Vizcaino*, 290 F.3d at 1051 n.6 (noting that courts routinely approve percentage-of-the-fund fee awards with a multiplier over lodestar of between one and four) (citations omitted); *Craft*, 624 F. Supp. 2d at 1125 (approving percentage fee at 5.2 multiplier over lodestar, and listing over a dozen cases with multipliers in the 5 to 19.6 range). And once those additional factors of Class Counsel's ongoing and future work—overseeing the execution of the notice plan; drafting the motion for final approval, including addressing any objections to the settlement; and preparing for and participating in the final approval hearing; and monitoring and enforcing the settlement (as necessary) for the next five years—are taken into account, the multiplier, if it exists at all, will be minimal.

In short, the lodestar comparison confirms that the 33% fee request is eminently reasonable.

### E. Class Members Have Ample Opportunity To Assess This Fee Request.

Courts can also consider the reaction of the class when assessing the reasonableness of a fee requested by class counsel. *Craft*, 624 F. Supp. 2d at 1117. In this case, in accord with the notice sent to the provisionally certified Class on June 16, this fee petition is being filed and posted to the Settlement-related website

---

considerations—particularly in light of the benefits obtained for the Class, the risks assumed by Class Counsel, the expectation to receive a risk enhancement for a successful outcome, and the fact that their established hourly rates do not reflect the risks assumed in this full contingency case.

over three weeks before the deadline for Class Members to opt out of or object to the Settlement. Class Counsel will be prepared to address the reaction of Class Members to the fee request in the motion for final approval and at the Final Approval Hearing. The notice sent to the Class described the fee to be requested by Plaintiff for Class Counsel. As of this filing, Class Counsel has not received any objections to the Settlement, including to the fee request.

## III.   THE COURT SHOULD AWARD CLASS COUNSEL THEIR OUT-OF-POCKET EXPENSES.

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Williams*, 2017 WL 490901, at *4 (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). Attorneys routinely bill clients for expenses such as travel, filing fees, and attorney service fees, and it is thus appropriate to allow recovery of these costs from the settlement fund. *Id.*

Here, Class Counsel have described their expenses in the Goldfarb Declaration. Goldfarb Decl. ¶ 21. That listing of expenses shows that Class Counsel have litigated the case efficiently, with no large expenditures. *Id.* Plaintiff respectfully requests that the Court approve payment of these expenses incurred by Class Counsel from the Settlement Amount in the amount of $9,370.47.

## IV.   THE COURT SHOULD GRANT FINAL APPROVAL TO THE INCENTIVE AWARD FOR THE NAMED PLAINTIFF.

Named plaintiffs are eligible for reasonable incentive payments as part of a class action settlement. *Williams*, 2017 WL 490901 at *5 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). When evaluating the reasonableness of an incentive award, courts may consider factors such as actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the plaintiff's time and effort expended, and reasonable concerns about potential adverse consequences of serving as the class representative. *Id.*

PL.'S MEM. FOR ATTY FEES AND COSTS;
CASE NO. 2:15-CV-07074-MWF-JPR

Here, after considering these factors, the Court recognized the important role that the named Plaintiff played in voluntarily shedding light on her own mental health history to enable this case to be brought, and ultimately to change Cigna's TMS policy and obtain significant monetary relief for persons with major depression who were denied coverage for TMS pursuant to Cigna's categorical policy. ECF No. 71 at 5; *see also* Goldfarb Decl. ¶¶ 23-25; Bendat Decl. ¶ 9. The Court preliminarily approved a $10,000 incentive award for Plaintiff. ECF No. 71 at 5-6. Plaintiff respectfully asks the Court to finally approve that amount in connection with final approval of the Settlement.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court finally approve a fee equal to 33% of the Settlement Amount, approve payment of Class Counsel's expenses from the Settlement Amount, and approve a $10,000 incentive award.

Dated: June 30, 2017

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

By:   /s/ Andrew N. Goldfarb
        Andrew N. Goldfarb

Andrew N. Goldfarb (Bar No. 235615)
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
*agoldfarb@zuckerman.com*

Meiram Bendat (Bar No. 198884)
PSYCH-APPEAL, INC.
8560 West Sunset Boulevard
Suite 500
West Hollywood, CA 90069

D. Brian Hufford (*pro hac vice*)
Jason S. Cowart (*pro hac vice*)
ZUCKERMAN SPAEDER LLP
399 Park Avenue, 14th Floor
New York, NY 10022

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
*mbendat@psych-appeal.com*

Tel: (212) 704-9600
Fax: (212) 704-4256
*dbhufford@zuckerman.com*
*jcowart@zuckerman.com*

*Attorneys for Plaintiff Annette Weil and the*
*Provisionally Certified Class*